**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

ANTROYNE J. BARNETTE, a/k/a Black,
          *Defendant-Appellant.*

No. 04-4436

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Joseph F. Anderson, Jr., Chief District Judge.
(CR-02-1173-JFA)

Argued: September 20, 2005

Decided: October 21, 2005

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Affirmed by published opinion. Judge Michael wrote the opinion, in which Judge Motz and Judge King joined.

## COUNSEL

**ARGUED:** John Herman Hare, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. Marshall Prince, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., SMITH, MASSEY, BRODIE & THURMOND, P.A., Aiken, South Carolina, for Appellee.

**OPINION**

MICHAEL, Circuit Judge:

Antroyne J. Barnette appeals his sentence for drug and firearms offenses. Barnette contends that the district court impermissibly reduced the degree of its downward departure under § 5K1.1 of the U.S. Sentencing Guidelines (U.S.S.G.) based on the possibility of a future sentence reduction under Fed. R. Crim. P. 35(b) if Barnette continued to provide substantial assistance to the government. Because the record establishes that the district court fully exercised its authority and discretion under § 5K1.1, we affirm Barnette's sentence.

I.

In a superseding indictment filed on March 19, 2003, Barnette and fourteen codefendants were charged with drug trafficking and firearms crimes. On June 30, 2003, Barnette pled guilty under a plea agreement to one count of conspiracy to possess with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846, and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

Barnette began cooperating with the government before the original indictment was returned on October 22, 2002. He provided incriminating information, including grand jury testimony, about his eventual codefendants, and his early cooperation prompted a number of his codefendants to plead guilty. Five codefendants went to trial; Barnette testified for the government and "did a fine job as a witness," according to the Assistant U.S. Attorney (AUSA) in charge of the prosecution. J.A. 124-25. Barnette also persuaded his girlfriend to testify as a government witness. His extensive cooperation prompted the government to state that he had "substantially lessened the burden on the Government in having to try this case and significantly strengthened the case against those co-defendants who went to trial." J.A. 94.

The trial against Barnette's codefendants ended on August 6, 2003, and Barnette was sentenced almost ten months later, on May 27,

2004. Prior to sentencing the government moved pursuant to § 5K1.1 for a downward departure due to Barnette's substantial assistance in the investigation and prosecution of others, especially his codefendants. At the sentencing hearing the AUSA outlined Barnette's cooperation at the grand jury and trial stages. In addition, the AUSA noted that Barnette had provided information about one codefendant who was a fugitive. The AUSA also reported that Barnette had cooperated in a murder investigation being conducted by state authorities. Because Barnette would be a key witness or an important source of information in the prosecution of these open cases, the AUSA told the district court that Barnette was "well positioned for additional reductions in his sentence" under Rule 35. J.A. 125. For this reason, the AUSA asked the court "to be guarded in the amount of [the § 5K1.1] reduction." J.A. 125-26. In the very next sentence, however, the AUSA urged that the court "give [Barnette] all he is due because of the cooperation he gave to [the government] with regard to this particular case." J.A. 125.

Barnette's lawyer reminded the district court that the extent of a downward departure should not be reduced by the prospect of Barnette's future cooperation or an eventual Rule 35(b) motion. Rather, defense counsel said, "a downward departure [under § 5K1.1] needs to be made based on what [Barnette] has done to this point." J.A. 126. After recounting Barnette's cooperation, his lawyer urged the court to consider a three-level downward departure.

The district court granted Barnette a two-level downward departure under § 5K1.1, from level thirty-one (range of 188 to 235 months) to level twenty-nine (range of 151 to 188 months). The court said that it considered a two-level departure "appropriate" after "hearing from counsel, reflecting upon the trial at which [Barnette] testified, [and] considering all the surrounding circumstances." J.A. 129. The court then sentenced Barnette to 180 months in prison to be followed by five years of supervised release. This sentence, the court said, was based on a number of factors, including the severity of Barnette's offenses, his apparent remorse, his cooperation with the government, and his willingness to cooperate further. J.A. 133. The court ended by observing that "[Barnette] has a chance to further reduce his sentence . . . depending on what happens down the road." *Id.*

Barnette appeals his sentence.

## II.

Barnette contends that he received an illegal sentence because the district court failed to exercise its full discretion in departing downward under § 5K1.1. According to Barnette, the court partially (and impermissibly) reserved its discretion under § 5K1.1 by reducing the degree of the departure on account of Barnette's potential for a future sentence reduction under Rule 35(b). We have jurisdiction to review a sentence "imposed in violation of law." 18 U.S.C. § 3742(a)(1).

This appeal turns on the distinction between § 5K1.1 and Rule 35(b). Section 5K1.1 allows a district court to sentence a defendant below the applicable guideline range if he has provided substantial assistance in the investigation and prosecution of others. U.S.S.G. § 5K1.1. Rule 35(b) allows a court to resentence a defendant to account for substantial assistance provided after the initial sentence was imposed. Fed. R. Crim. P. 35(b). Section 5K1.1 is thus designed to reward substantial assistance rendered prior to initial sentencing, and Rule 35(b) is designed to reward substantial assistance rendered thereafter. *See United States v. Drown*, 942 F.2d 55, 59 (1st Cir. 1991). A sentencing court cannot allow "the prospect of Rule 35(b) relief in the future" to influence or alter its decision on a motion for a downward departure under § 5K1.1. *Id.*; *see United States v. Ridge*, 329 F.3d 535, 541-42 (6th Cir. 2003). Specifically, a court cannot reduce the extent of a downward departure under § 5K1.1 in order to "keep the carrot dangling just out of [the defendant's] reach, thereby continuing the incentive that prompted his presentence cooperation into the post-sentence period." *Drown*, 942 F.2d at 59. The authority vested in a court to decide a § 5K1.1 motion must be exercised fully at the initial sentencing; the discretion attending this authority may not be "partially 'reserved' for a future time" when a Rule 35(b) motion might be filed. *United States v. Bureau*, 52 F.3d 584, 595 (6th Cir. 1995).

Barnette relies on two statements in the sentencing record to argue that the district court partially reserved its discretion when it decided the government's § 5K1.1 motion. The first is a statement by the AUSA asking the court to be guarded in granting a § 5K1.1 reduction

because of Barnette's potential for additional sentence reductions under Rule 35. The second is an observation by the court at the end of the hearing that Barnette had the chance to reduce his sentence further based on future cooperation. When these statements are considered in the context of the entire sentencing record, however, there is no indication that the district court reserved its discretion under § 5K1.1 in order to prod Barnette into further cooperation with the government.

At the sentencing hearing the district court was fully advised about Barnette's substantial cooperation in the investigation and prosecution of his codefendants and the investigation in a state murder case. Because one of Barnette's codefendants (a fugitive) was yet to be tried and the state murder investigation was continuing, the AUSA pointed out that Barnette had the potential for additional sentence reductions under Rule 35(b). The AUSA then asked the court "to be guarded in the amount of reduction that [it] would give to Mr. Barnett[e] [under § 5K1.1] at this time." J.A. 125-26. Although this comment by the AUSA was ill-advised, the AUSA followed immediately with the appropriate suggestion to the court: "At the same time, give [Barnette] all he is due [by way of a § 5K1.1 reduction] because of the cooperation he gave to us with regard to this particular case." J.A. 126. Moments later, Barnette's lawyer emphasized that any downward departure decision must be based "on what [Barnette] has done to this point," with none of the merited reduction held back until he delivers substantial assistance in the post-sentence period. J.A. 126.

The district court granted the government's § 5K1.1 motion by departing downward two levels. The court explained that its departure decision was based on the reports of Barnette's cooperation offered by counsel for both sides, the court's own observation and assessment of Barnette's assistance as a trial witness, and "all the surrounding circumstances." J.A. 129. This explanation indicates that the court fully exercised its discretion to depart under § 5K1.1 and that it did not partially reserve its discretion in anticipation of a Rule 35(b) motion.

The sentencing hearing then proceeded to a decision about the appropriate sentence length within the 151- to 188-month range. The court ultimately sentenced Barnette to 180 months in prison. The court took care to explain its reasons for the sentence, mentioning

both the severity of Barnette's crimes and his cooperation. At the very end of the proceeding, in what appeared to be postscript, the court noted that "[Barnette] has a chance to further reduce his sentence . . . depending on what happens down the road." J.A. 133. We do not take this postscript, which came several minutes after the court made its § 5K1.1 decision, as a sign that the court had partially withheld or reserved its discretion when it made the two-level downward departure under § 5K1.1. Rather, it appears that the court intended to end the sentencing hearing with a word of encouragement to Barnette: the government might move at a later time for a further reduction in sentence under Rule 35(b) if Barnette continued to provide substantial assistance in the post-sentence period.

In sum, the sentencing record shows that the district court fully exercised its authority and discretion when it decided the government's motion for a downward departure under § 5K1.1. Because Barnette's sentence was not imposed in violation of law, we affirm.

*AFFIRMED*