UNITED STATES of America, Appellee,

v.

Willie McANDREWS, a/k/a Willie Wilson, Defendant, Appellant.

No. 93–1596.

United States Court of Appeals,
First Circuit.

Heard Nov. 1, 1993.

Decided Dec. 13, 1993.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, ME, with whom Jay P. McCloskey, U.S. Atty., Nicholas M. Gess and William H. Browder, Jr., Asst. U.S. Attys., Bangor, ME, were on brief, for the U.S.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

SELYA, Circuit Judge.

This appeal conveys two invitations. First, it invites us to exercise appellate jurisdiction in·connection with rulings on motions invoking Fed.R.Crim.P. 35(b).[1] Second, it invites us to require district courts, in passing upon such motions, to hold evidentiary hearings on demand. We accept the first invitation, but decline the second.

## I. BACKGROUND

A jury found defendant-appellant Willie McAndrews, also known as Willie Wilson, guilty of violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Using the 1989 edition of the federal sentencing guidelines, the district court sentenced appellant to 125 months in prison.

In the aftermath of his sentence, appellant cooperated with federal authorities. Consequently, the government filed a timely sentence reduction motion under Rule 35(b). Appellant requested an evidentiary hearing on the motion. Following a lengthy continuance designed to permit a better informed assessment of the fruits of appellant's cooperation, the district court eschewed an evidentiary hearing and, acting on the parties' written submissions, granted the government's motion. Dissatisfied with the extent of the reduction—the court sliced 29 months from the sentence—McAndrews appeals. We affirm.

John F. O'Donnell, Waterville, ME, for defendant, appellant.

---

1. The rule was rewritten as part of the Sentencing Reform Act, effective November 1, 1987, and was further amended in 1991. *See* Fed. R.Crim.P. 35 advisory committee's notes. In its current incarnation, the rule provides in pertinent part:

   The court, on motion of the Government made within one year after the imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense.... The court's authority to reduce a sentence under this subsection includes the authority to reduce such sentence to a level below that established by statute as a minimum sentence. Fed.R.Crim.P. 35(b).

## II. APPELLATE JURISDICTION

We deal first with the jurisdictional quandary. It has two aspects. We treat them sequentially.

### A. *The Departure Analogy.*

█ It is settled that a criminal defendant cannot ground an appeal on the sentencing court's discretionary decision not to depart below the guideline sentencing range. *See, e.g., United States v. Amparo,* 961 F.2d 288, 292 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *United States v. Hilton,* 946 F.2d 955, 957 (1st Cir.1991); *United States v. Romolo,* 937 F.2d 20, 22 (1st Cir.1991).[2] In the same vein, if the sentencing court affirmatively exercises its discretion and departs downward, no appeal will lie on behalf of the benefitted defendant "merely because [he] is dissatisfied with the quantification of the court's generosity." *United States v. Pighetti,* 898 F.2d 3, 4 (1st Cir.1990). Phrased another way, the court of appeals lacks jurisdiction to hear an appeal by a party in whose favor a departure decision operates. *See United States v. Fisher,* 3 F.3d 456, 464 (1st Cir.1993); *United States v. Gregorio,* 956 F.2d 341, 345 n. 5 (1st Cir. 1992); *Pighetti,* 898 F.2d at 4.

█ The general rule that departure decisions of the type discussed above are nonappealable holds true in the special situation of downward departures for substantial assistance.[3] Thus, neither a district court's refusal to depart downward to reward a defendant's substantial assistance, nor the court's refusal to grant as generous a departure as a cooperating defendant had hoped, will normally constitute an appealable event. *See United States v. Doe,* 996 F.2d 606, 607 (2d Cir.1993); *United States v. Correa,* 995 F.2d 686, 687 (7th Cir.1993); *United States v. Womack,* 985 F.2d 395, 401 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 276, 126 L.Ed.2d 227 (1993); *United States v. Mariano,* 983 F.2d 1150, 1153–54 (1st Cir.1993).

█ In this appeal, the government attempts to analogize such "substantial assistance" departures to sentence reductions under Rule 35(b) for jurisdictional purposes.[4] The analogy has a certain superficial attraction because both mechanisms operate to bring a defendant's sentence below the guideline sentencing range and entail similar judicial inquiries, *compare, e.g., Mariano,* 983 F.2d at 1156 (discussing factors influencing departures under U.S.S.G. § 5K1.1) *with, e.g., United States v. Milken,* 1992 WL 196797 at *4, 1992 U.S.Dist. LEXIS 11670 at *3–*5 (S.D.N.Y.1992) (discussing factors influencing Rule 35(b) sentence reductions). But on closer perscrutation, the analogy fails because it overlooks a jurisdictionally significant difference between downward departures and sentence reductions.

█ The right of appeal in criminal cases is purely a creature of statute, that is, a party "must come within the terms of [some] applicable statute" in order to appeal. *Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977). Prior to the advent of guideline sentencing, a criminal defendant, in theory, could easily achieve this benchmark. After all, the courts of appeals have jurisdiction over "appeals from all final decisions of the district courts," 28 U.S.C. § 1291; and, in a criminal case, the imposition of sentence constitutes a final decision within the meaning of section 1291, *see*

2. An exception applies when the sentencing court's ruling results from a mistake of law. *See, e.g., Amparo,* 961 F.2d at 292; *Hilton,* 946 F.2d at 957. Thus, "appellate jurisdiction may attach when it appears that the failure to depart stemmed from the sentencing court's mistaken impression that it lacked the legal authority to depart or, relatedly, from the court's misapprehension of the rules governing departure." *United States v. Mariano,* 983 F.2d 1150, 1153 (1st Cir.1993) (collecting cases).

3. Beyond inviting a comparison between the triggering mechanisms, *compare* U.S.S.G. § 5K1.1 *with* U.S.S.G. § 5K2.0, it would be supererogatory for us to rehearse today the differences between "substantial assistance" and "mitigating circumstances" departures. At any rate, we have charted that terrain in other cases. *See, e.g., United States v. Mariano,* 983 F.2d 1150, 1154–55 (1st Cir.1993); *Romolo,* 937 F.2d at 24–25.

4. Although this analogy has never before been carefully probed by a federal appellate court, it appears to have been implicitly approved in a dictum contained in *United States v. Yesil,* 991 F.2d 1527, 1531 (11th Cir.1992).

*Parr v. United States,* 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377 (1956); *Berman v. United States,* 302 U.S. 211, 212–13, 58 S.Ct. 164, 165–66, 82 L.Ed. 204 (1937). Nevertheless, the theoretical possibility of an appeal had few practical consequences; since judges possessed extremely wide discretion and were not required to state reasons for imposing particular punishments, sentences were virtually unreviewable (so long as they fell within applicable statutory limits). *See United States v. Ruiz–Garcia,* 886 F.2d 474, 476–77 & n. 4 (1st Cir.1989) (discussing historical background of sentencing appeals).

Congress changed the calculus radically when it enacted 18 U.S.C. § 3742 as part of the Sentencing Reform Act of 1984, constituting it as the exclusive avenue through which a party can appeal a sentence in a criminal case.[5] The statute alters prior practice in two salient respects, narrowing the types of sentences that can be appealed while simultaneously augmenting the grounds for appealing the remaining types of sentences. *See, e.g.,* S.Rep. No. 225, 98th Cong., 2d Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3338 (stating that "section 3742 creates for the first time a comprehensive system of review of sentences that permits the appellate process to focus attention on those sentences whose review is crucial to the functioning of the sentencing guidelines system, while also providing adequate means for correction of erroneous and clearly unreasonable sentences").

■ In the post-guidelines era, then, only sentences that meet the criteria limned in section 3742 are amenable to appellate review. And because neither refusals to depart nor downward departures result in a sentence "greater than the sentence specified in the applicable guideline range," 18 U.S.C. § 3742(a)(3), or otherwise trigger the prophylaxis of section 3742(a), a defendant ordinarily will not be able to appeal from such a decision, *see Pighetti,* 898 F.2d at 4.[6]

■ Rule 35(b) is a horse of a different hue. By definition, a sentence must already have been imposed before Rule 35(b) can be invoked and a sentence reduction contemplated. It follows that the appealability of an order resolving a Rule 35(b) motion is not controlled by 18 U.S.C. § 3742 because such an order is not, properly speaking, a sentence.[7] Rather, appealability in such circumstances, like appealability with respect to the disposition of virtually all other post-judgment motions, is governed by 28 U.S.C. § 1291. And an order resolving a Rule 35(b) motion satisfies the preconditions established by section 1291, for entry of the order leaves nothing further to be done. *See United States v. Metropolitan Dist. Comm'n,* 847 F.2d 12, 14 (1st Cir.1988) (elucidating "general rule" that an order becomes final and appealable when a court resolves a contested matter, leaving nothing further to be done) (citing, *inter alia, Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945)). An order granting or denying a Rule 35(b) motion is, thus, a final decision for purposes of section 1291.

■ Cast in this mold, our analysis accords with the general principle, taken for granted in both our criminal and civil jurisprudence, that rulings disposing of motions which seek to alter preexisting judgments are appealable. *See, e.g., United States v. Slade,* 980 F.2d 27, 32 (1st Cir.1992) (entertaining appeal from denial of post-judgment

---

**5.** The statute provides in pertinent part:

A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range ... or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(a) (1988). The terms under which the government may appeal a sentence are substantially similar. *See id.* at § 3742(b).

**6.** This statement is, of course, subject to the exception previously mentioned. *See supra* note 2. We see no reason why the same exception should not apply if, and to the extent that, a mistake of law materially and demonstrably influences the extent of a departure decision.

**7.** On this point, we differ from the position adumbrated, without analysis, in *United States v. Yesil,* 991 F.2d 1527, 1531 n. 4 (11th Cir.1992).

motion to present new evidence pursuant to Fed.R.Crim.P. 33); *Fiore v. Washington Cty. Community Mental Health Ctr.,* 960 F.2d 229, 232–33 (1st Cir.1992) (en banc) (discussing appealability of post-judgment motions in civil cases; restating established rule that denials of post-judgment motions "are appealable separately from the appeal of the underlying judgment"); *United States v. Distasio,* 820 F.2d 20, 22–24 (1st Cir.1987) (entertaining appeal from *grant* of sentence reduction motion under former Rule 35(b)); *see also* cases cited *infra* p. 279 (entertaining appeals from *denials* of sentence reduction motions brought pursuant to former Rule 35(b)).

■ For the foregoing reasons, the government's attempted analogy between downward departures for substantial assistance and sentence reductions is unpersuasive in connection with appellate jurisdiction. We conclude that, even in an era dominated by the sentencing guidelines, an order granting or denying a timely motion for a sentence reduction, unlike certain analogous departure decisions, remains appealable.

### B. *Lack of Adverseness.*

■ Perhaps the better argument against appellate jurisdiction in the case of a granted Rule 35(b) motion is that the defendant, *qua* appellant, lacks "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). At least in certain circumstances, a prevailing party cannot appeal from an order or judgment entered in his favor. *See Sierra Club v. Marsh,* 907 F.2d 210, 213 (1st Cir.1990); *In re Public Serv.*

*Co.,* 898 F.2d 1, 2 (1st Cir.1990); *Bath Iron Works Corp. v. Coulombe,* 888 F.2d 179, 180 (1st Cir.1989). And, here, the lower court's order operated in appellant's favor, trimming 29 months from his sentence. It is, therefore, arguable that appellant, having derived a substantial benefit, should not be allowed to appeal from the ruling.

■ The problem with such an argument is twofold. First, it is overly simplistic. The key to the appealability of a final order is injury, not prevailing party status. *See Deposit Guaranty Nat'l Bk. v. Roper,* 445 U.S. 326, 334, 100 S.Ct. 1166, 1171–72, 63 L.Ed.2d 427 (1980) (explaining that "appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art. III"). A prevailing party dissatisfied with the quantum of relief obtained—say, a personal injury plaintiff who receives a favorable liability finding but a paltry damage award—ordinarily can seek appellate review.[8] So it is here.

Second, this court has already repudiated the lack of adverseness argument in an almost identical context. In *Distasio,* we considered the case of a criminal defendant who, after having been granted a reduction in sentence under an earlier version of Rule 35(b), sought to appeal the adequacy of the reduction. *See Distasio,* 820 F.2d at 22. Although we vacated the district court's order on a different ground, we ruled squarely that "a criminal defendant may appeal the adequacy of sentence reductions granted pursuant to Fed.R.Crim.P. 35(b)." *Id.* at 24. The recent amendments to Rule 35(b) do not undermine the rationale on which *Distasio* rests,[9] and we are bound by it. *See, e.g.,*

---

8. We note that, if the law were to the contrary in the Rule 35(b) environment, a district court could invariably defeat appellate oversight of an otherwise reviewable denial of a Rule 35(b) motion by, for example, lopping one day off a defendant's sentence.

9. The current version of Rule 35(b), applicable to crimes committed on or after November 1, 1987, differs in at least three ways from former Rule 35(b). First, the text of the new rule limits the ground for relief to "substantial assistance in the

investigation or prosecution of another person who has committed an offense." Second, the new rule adds a "government motion" requirement. Finally, in the latest version of Rule 35(b), the period within which a Rule 35(b) motion may be filed has been lengthened somewhat. Nonetheless, the essence of a Rule 35(b) determination—the district court's discretionary decision whether to reduce a defendant's sentence, and if so, to what extent—remains intact.

*Doughty v. Underwriters at Lloyd's, London*, 6 F.3d 856, 861 (1st Cir.1993) (discussing binding effect of prior panel opinions within a circuit).

■ We hold, therefore, that we have jurisdiction to hear a timely appeal in which a prevailing defendant complains that the district court acted too grudgingly in dispensing relief under Rule 35(b). This case fits within that jurisdictional enclave.

## III. THE MERITS

■ Having ascertained the existence of appellate jurisdiction, the merits of the appeal need not detain us. Appellant's flagship contention is that the district court erred in denying his motion for an evidentiary hearing and, thus, robbed him of the opportunity to make a more formidable showing on the merits. We are not persuaded.[10]

■ In this endeavor, appellant's main focus is his insistence that "without conducting an evidentiary hearing, the district court cannot possibly be in a position to evaluate the full nature and extent of [a defendant's] cooperation." Appellant's Brief at 9. We flatly reject such a rigid formulation. A criminal defendant is not automatically entitled to an evidentiary hearing on a pretrial or posttrial motion. *See United States v. McGill*, 11 F.3d 223, 225 (1st Cir.1993) (collecting cases).

■ We can envision no sound basis for exempting Rule 35(b) motions from the sweep of this generality. While gauging the extent and value of a defendant's assistance to the authorities is a delicate, highly nuanced matter, we have consistently abjured mandatory evidentiary hearings in a wide variety of equally delicate, equally nuanced situations. *See, e.g., United States v. Garcia*, 954 F.2d 12, 19 (1st Cir.1992) (sentencing); *United States v. Panitz*, 907 F.2d 1267, 1273–74 (1st Cir.1990) (outrageous misconduct); *United States v. O'Brien*, 895 F.2d 810, 817 (1st Cir.1990) (motion for *Nebbia* hearing); *United States v. Saade*, 652 F.2d 1126, 1135–36 (1st Cir.1981) (selective prosecution). Tellingly, motions brought under earlier versions of Rule 35(b) have not been thought to require evidentiary hearings, or even oral argument. *See, e.g., United States v. DeCologero*, 821 F.2d 39, 44 (1st Cir.1987); *United States v. Heller*, 797 F.2d 41, 42 (1st Cir.1986); *United States v. Foss*, 501 F.2d 522, 529 (1st Cir.1974). We conclude, therefore, that a district court has broad discretion to craft appropriate procedures for considering Rule 35(b) motions, including the discretion to grant or deny an evidentiary hearing.[11] *See United States v. Winfield*, 960 F.2d 970, 972 (11th Cir.1992); *United States v. Collins Spencer Catch The Bear*, 727 F.2d 759, 762 (8th Cir.1984).

■ Once it is determined that Rule 35(b) motions, as a class, do not demand special swaddling, appellant's assignment of error founders. We review the district court's rulings granting or denying evidentiary hearings under an abuse-of-discretion rubric. *See Garcia*, 954 F.2d at 19; *DeCologero*, 821 F.2d at 44. Because the trial judge is

---

**10.** Appellant hints, but offers no developed argumentation to show, that the sentence reduction granted by the district court is, in fact, too niggardly. That approach is, therefore, foreclosed. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) (warning that issues adverted to in a perfunctory manner, unaccompanied by developed argumentation, are waived), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

**11.** Appellant cites *United States v. Yesil*, 968 F.2d 1122 (11th Cir.1992), for the proposition that a district court must always grant a requested evidentiary hearing when the government moves for a sentence reduction under Rule 35(b). The case does not bear the weight that appellant ascribes to it. In the first place, the original opinion in *Yesil* has been superseded, and the court's re-

vised opinion makes clear "that the decision whether or not to grant an evidentiary hearing [on a Rule 35(b) motion] generally is committed to the [sentencing] court's discretion." *United States v. Yesil*, 991 F.2d 1527, 1531 (11th Cir. 1992) (superseding earlier opinion). In the second place, written plea agreements obligated the government in *Yesil*, upon completion of the defendants' cooperation, to apprise the court fully concerning the nature and extent of defendants' actions. *Id.* at 1532. Because of the language of the plea agreements, "[t]he district court lost its usual discretion to determine whether or not to grant a party's request for an evidentiary hearing...." *Id.* In the case at bar, the record does not show any plea agreement between the defendant and the prosecution. Hence, *Yesil* is inapposite.

steeped in the facts and has a superior vantage point for assessing motions of this sort, we will not overrule the refusal to convene an evidentiary hearing absent a clear showing that the court's discretion has been misused. Consequently, a party seeking an evidentiary hearing on a post-judgment motion must carry a formidable burden of persuasion. *See McGill*, 11 F.3d at 225–226.

■ McAndrews wholly failed to carry this heavy burden. The government made a detailed written proffer to the district court, spelling out the facts referable to its sentence reduction motion. Appellant had a similar opportunity. Yet, he offered no specifics to contradict the prosecution's proffer or to suggest material omissions.[12] Beneath the rhetoric, appellant's filing evinced little more than the hope that, should a hearing eventuate, something helpful might emerge. But more is exigible. A district court need not grant an evidentiary hearing on a motion merely because a defendant's hopes spring eternal or because a defendant wishes to mount a fishing expedition. *See, e.g., DeCologero*, 821 F.2d at 44 (cautioning that evidentiary hearings cannot be provided upon demand, "at the whim of a suitor").

■ The short of it is that a criminal defendant who seeks an evidentiary hearing on a motion must, at the very least, carry an entry-level burden by making "a sufficient threshold showing that material facts [are] in doubt or in dispute." *Panitz*, 907 F.2d at 1173; *see also Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978) (requiring "substantial preliminary showing" antecedent to evidentiary hearing); *Saade*, 652 F.2d at 1135 (similar). In this instance, appellant offered no persuasive reason to believe that taking testimony would—or even might—be productive. Thus, the district court, in refusing to grant an evidentiary hearing, did not abuse its considerable discretion.

**12.** At one point, appellant asserted that, in addition to the efforts that the government catalogued, he also "provided the impetus for two other individuals, Charlie Luna and Pedro Gomez, to commence cooperation," and that new cases were developed because of this information. But scrutiny of the government's proffer

## IV. CONCLUSION

We need go no further. We hold that we have jurisdiction to consider appellant's complaint anent the disposition of his Rule 35(b) motion. Having exercised this jurisdiction, however, we find no error in the district court's order or in the procedure it employed.

*Affirmed.*

reveals complete agreement on this point—and, thus, no need for an evidentiary hearing. The fact that the government did not identify Luna and Gomez by name, but referred to them merely as "two other suspects," is a distinction bereft of any meaningful difference.