# United States Court of Appeals
## For the First Circuit

No. 08-1203

UNITED STATES OF AMERICA,

Appellee,

v.

JONATHAN POLAND,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,

Torruella and Boudin, Circuit Judges.

Judith H. Mizner, Assistant Federal Public Defender, Federal
Public Defender's Office, for appellant.
    Renée M. Bunker, Assistant United States Attorney, with whom
Paula D. Silsby, United States Attorney, was on brief for appellee.

April 2, 2009

**BOUDIN**, <u>Circuit Judge</u>.    The issue the parties have framed on this appeal is whether, where the district court adjusts a prior sentence to account for post-sentence cooperation by the defendant, the adjustment may reflect factors <u>other</u> than that cooperation.  We sustain the district court's disposition of this case but on a narrower ground, deferring until necessary the larger issue--which may arise only rarely and implicates a difficult and delicate issue of statutory construction.

The defendant, Jonathan Poland, was eighteen years and three months old when he and his seventeen-year old cousin (who was just shy of his eighteenth birthday) made and detonated two pipe bombs during the Spring of 2004.  Poland was indicted and convicted of unlawfully possessing an unregistered destructive device, 26 U.S.C. §§ 5861(d), 5841, 5845(f), 5871 (2006), and use of an explosive to maliciously damage or destroy property used in interstate commerce, 18 U.S.C. § 844(i) (2006).

The explosion caused little damage but was close to a truck stop office and fuel of various kinds and so was no minor prank.  Poland was sentenced to 63 months imprisonment, the three months over and above the mandatory minimum sentence of 60 months being added because he committed perjury during a suppression hearing.  Poland appealed, but later withdrew the appeal and cooperated with the government.

The cooperation led to successful government proceedings against Poland's cousin but, the matter having begun with a juvenile charge, the cousin received a sentence of only three months. After Poland cooperated, the government moved to reduce Poland's sentence to 48 months. Fed. R. Crim. P. 35(b)(1). Poland sought a sentence below 48 months, arguing that all of the ordinary statutory factors could be considered afresh, see 18 U.S.C. § 3553(a), and stressing the much longer sentence he received compared to his cousin.

At a hearing on the motion, the district judge asked the parties to address the impact of new language in Rule 35(b). Under precedents construing former versions, sentencing courts may consider only the extent of the cooperation given in calculating the reduced sentence. The district court noted that both the rule's new language and an advisory committee note suggested that on re-sentencing any of the factors identified in 18 U.S.C. § 3553(a) could now be considered. The pertinent language of the respective changes appears below.

In the end, the district court held that to so read the new rule would work a substantive change and violate the Rules Enabling Act, 28 U.S.C. § 2072(a). United States v. Poland, 533 F. Supp. 2d 199, 210 (D. Me. 2008). To avoid this outcome, the district court followed precedent under the old rule and held that "the new Rule 35(b) . . . limit[s] the judge, as before the

amendment, to consider only substantial assistance factors in support of the amount of a reduction, notwithstanding the amendment and the Advisory Committee Note." Id. at 211.

The government's recommendation did not bind the district court, which concluded that a reduction to 40 months properly accounted for the cooperation provided by Poland. However, the court said that were it free to consider factors other than cooperation--in particular "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6)--it would reduce Poland's sentence to 30 months. Id. at 213-14.

Poland now appeals, arguing that under the current Rule 35(b), the judge was free once the motion was made to consider factors other than cooperation in reducing the sentence. We have jurisdiction over the appeal, 28 U.S.C. § 1291; United States v. McAndrews, 12 F.3d 273, 277-78 (1st Cir. 1993); and, as the issue is whether the district court misinterpreted governing law, review is de novo and our authority to provide it is clear despite a circuit split that might matter if the issue were not purely legal.[1]

---

[1]Other circuits, disagreeing with McAndrews, regard the appealability of a Rule 35(b) decision as limited by 18 U.S.C. § 3742, e.g., United States v. Haskins, 479 F.3d 955, 957 (8th Cir. 2007) (per curiam), but even if that limitation applied, the claim here would be reviewable because--if the district court were mistaken--the sentence would reflect a mistake of law and so be "imposed in violation of law" under section 3742(a)(1).

The merits of the legal issue, to which we now turn, require a precise understanding of how Rule 35(b) evolved. Before the sentencing guidelines, Rule 35(b) permitted a sentencing judge to reduce a sentence, more or less without condition, within 120 days of the sentence or disposition of any appeal. This open ended approach was substantially altered by the Sentencing Reform Act of 1984, Pub. L. No. 98-473, Title II, 98 Stat. 1987 ("the Reform Act"), which adopted a framework for sentencing guidelines that aimed at restricting the discretion of judges in initial sentencing.

Consonantly, the Reform Act limited the judge's authority to <u>alter</u> a final sentence, confining it to three categories, 18 U.S.C. § 3582(c), of which only one directly concerns us. It reads:

> The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
> ....
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure . . . .

The Reform Act also rewrote Rule 35(b) to provide:

> The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence <u>to reflect a defendant's subsequent, substantial assistance</u> in the investigation or prosecution of another person who has committed an offense, in

accordance with the guidelines and policy statements issued by the Sentencing Commission
. . . .

Reform Act of 1984, § 212(b)(emphasis added).

Before the Reform Act became effective in 1987, Congress again added provisions to both 18 U.S.C. and to Rule 35, which furnished the district court authority, in both initial sentencing and re-sentencing, to impose sentences below prescribed <u>statutory minimums</u> based on a government substantial assistance motion, Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, Title I, §§ 1007, 1009, 100 Stat. 3207-08 (1986); but we defer discussion of those changes.

Given the underscored language of Rule 35(b) as amended by the 1984 Reform Act--"to reflect a defendant's subsequent, substantial assistance"--other circuit courts (unsurprisingly) concluded that only the defendant's substantial assistance could be considered in granting or measuring a Rule 35(b) reduction. <u>E.g.</u>, <u>United States</u> v. <u>Chavarria-Herrara</u>, 15 F.3d 1033, 1037 (11th Cir. 1994). This circuit (and other circuits) similarly construed parallel language in the statute that permits a sentence below a statutory minimum to reflect substantial assistance. <u>E.g.</u>, <u>United States</u> v. <u>Ahlers</u>, 305 F.3d 54, 60 (1st Cir. 2002).

In 2002, in re-drafting the rules to improve clarity, the advisory committee proposed a "stylistic" change to Rule 35(b), excising the language that required that a reduced sentence "reflect" a defendant's substantial assistance. Fed. R. Crim. P.

35 advisory committee's note, 2002 amendments.  Instead, the 2002 text provided only that "reducing the sentence accord[] with the Sentencing Commission's guidelines and policy statements."[2]

In fact, neither before nor after has the Commission adopted guidelines or policy statements directed to post-sentence reductions based on substantial assistance.  There has been from the outset a general guideline provision, not using "reflect" language, for guideline departures based on substantial assistance, seemingly directed to original sentencing. U.S.S.G. § 5K1.1.  This circuit, and other courts, read this guideline as implicitly incorporating such a requirement.  United States v. Chestna, 962 F.2d 103, 106-07 (1st Cir.), cert. denied 506 U.S. 920 (1992).

Despite the 2002 elision, the few circuits to address the issue continued to read Rule 35(b) as limiting post-sentence reductions to assistance-related factors.  E.g., United States v. Dobson, No. 07-15732, 2008 WL 4962927 at *2-3 (11th Cir. Nov. 21, 2008) (unpublished); United States v. Lindsay, 254 F. App'x. 168, 169-70 (4th Cir. 2007) (unpublished), cert. denied 128 S.Ct. 1688 (2008).  Precedent is limited because many circuits limit a defendant's ability to appeal decisions on Rule 35(b) motions. E.g., Haskins, 479 F.3d at 957.

---

[2]Since 1984, a number changes have been made to Rule 35(b); for example, the rule was altered in 2004 to allow consideration fo assistance provided after one year after sentencing but only under stated conditions.  Our discussion of rule changes is limited to those material to the present case.

The next step in the chronology was the Supreme Court's 2005 decision in United States v. Booker, 543 U.S. 220 (2005), making the guidelines advisory rather than mandatory to save them from constitutional invalidity. Thereafter, apparently believing that Booker required this change, the advisory committee recommended deletion of Rule 35(b)'s then existing requirement that a sentence reduction "accord[] with the Sentencing Commission's Guidelines and policy statements,"[3] and the deletion was adopted through the rules process effective December 1, 2007.

Rule 35(b) now reads in relevant part, and so read when the district court considered the government motion in this case, as follows:

> Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.

If this language alone were considered, Poland might well plausibly argue that a re-sentencing court could, in granting a substantial assistance motion, consider other factors and not just substantial assistance in setting the new sentence.

---

[3]Memorandum from Booker Subcomm. to Advisory Comm. on Criminal Rules, 4 (Mar. 15, 2005), available at http://www.uscourts.gov/rules/Agenda_Books.htm#criminal. This view was contrary to that of the Sentencing Commission staff. Letter from Judith W. Sheon, Staff Director, Sentencing Commission, to the Standing Committee (Feb. 15, 2006), available at http://www.uscourts.gov/rules/CRRules2005.htm.

This is so even though the language changes that produced the present rule resulted from two apparent mistakes. The first is the advisory committee's belief that deleting the limiting "reflect" language from Rule 35(b) in 2002 was mere clarification; the second is its view that <u>Booker</u> compelled it to delete in 2007 the remaining reference to the guidelines. The former error is patent, although temporarily masked by the reference to the guidelines, and stands as caution to restyling projects.

As for the second change, the revisors' view (although shared by the Ninth Circuit, <u>United States</u> v. <u>Hicks</u>, 472 F.3d 1167 (9th Cir. 2007)), quite probably misreads <u>Booker</u>. The jury trial concerns that led to invalidating mandatory guidelines for initial sentencing do not bear equally on every regulation of sentencing. <u>Booker</u>'s Sixth Amendment rationale built on a tension with jury trial values insofar as the guidelines <u>mandated</u> an increased penalty because of additional conduct (<u>e.g.,</u> using a gun, harming a victim) found only by the judge rather than the jury.

Neither the language of <u>Booker</u> nor its rationale appears to constrain Congress' power to delimit, whether by guideline or otherwise, the conditions on which judges may <u>reduce</u> sentences once imposed; Congress can surely decide whether and when any reductions are allowed and surely as well who should make the downward adjustment and on what basis. <u>Cf.</u> <u>United States</u> v. <u>Fanfan</u>, No. 08-2062, 2009 WL 531281, at *4, ___ F.3d ___ (1st Cir. Mar. 4,

-9-

2009) (constraining downward adjustment under 18 U.S.C. § 3582(c) based on revision of crack cocaine guideline).

But despite faulty premises, the 2002 and 2007 changes in Rule 35(b) were adopted through the rulemaking process, and laws based on mistaken premises, whether legal or factual, are not uncommon and are commonly given effect. Cf. Pernell v. Southall Realty, 416 U.S. 363 (1974). So such rule changes arguably control unless barred by the Rules Enabling Act, which famously authorizes "procedural" rules and provides that "[s]uch rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

The district court said that stripping out Congress' "reflect" language from Rule 35(b) and the limiting reference to the guidelines would comprise such a "substantive" change barred by the Rules Enabling Act; thus, the judge read back into the rule the "requirement that the reduction 'reflect' the 'subsequent substantial assistance.'" Poland, 533 F. Supp. 2d at 211. This, the judge said, brought back into play earlier case law almost uniformly reading such language to exclude non-assistance factors in determining such a reduction.

The Rules Enabling Act's key language is opaque and its few constructions have occurred in quite different contexts. Burlington N. R.R. Co. v. Woods, 480 U.S. 1 (1987); Sibbach v. Wilson, 312 U.S. 1 (1941). Among other difficulties, the statute

-10-

brings into play both an enduring conundrum--the line between substance and procedure--and the puzzle of the statute's reference to "rights."[4]  The rules process is among the most important endeavors in the judiciary; any constraining construction of the statute could have far reaching implications.

The sentencing question in our case arises out of a fact pattern that may not be common: usually the only new fact on a Rule 35(b) motion will be the substantial assistance furnished since other factors will have already been fully considered; it is the peculiarity here of the belated sentence for Poland's cousin that created a second argument for a reduction after the original sentence.  So we choose to affirm the district court's outcome on a narrower ground and defer for now any encounter with the Rules Enabling Act.

Poland's reduced sentence was below the statutory minimum of sixty months.  18 U.S.C. § 844(i).  Had the substantial assistance reduction Poland received occurred at the time of his initial sentencing, it would have been governed by 18 U.S.C. §

---

[4]Examples of the vast literature on the topic are Steven B. Burbank, The Rules Enabling Act of 1934, 130 U. Pa L. Rev. 1015 (1982); John Hart Ely, The Irrepressible Myth of Erie, 87 Harv. L. Rev. 693 (1974); Leslie M. Kelleher, Taking "Substantive Rights" (in the Rules Enabling Act) More Seriously, 74 Notre Dame L. Rev. 47 (1998); Martin H. Redish & Dennis Murashko, The Rules Enabling Act and the Procedural-Substantive Tension:  A Lesson in Statutory Interpretation, 93 Minn. L. Rev. 26 (2008).

3553(e), which was added to the Reform Act by the previously cited Anti-Drug Abuse Act of 1986; the provision states (emphasis added):

> Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

Rule 35(b) similarly provides, in language also added in 1986 by the same statute and now in subsection (4), that on the government's motion based on substantial assistance, "the court may reduce the sentence to a level below the minimum sentence established by statute." Traditionally, the reductions for substantial assistance below the statutory minimum--whether at initial sentencing or on sentence reduction--have been governed by the same standards, see, e.g., United States v. Doe, 940 F.2d 199, 203 n.7 (7th Cir.), cert. denied 502 U.S. 869 (1992), as Congress doubtless intended.

Courts would surely have reached this result in re-sentencing cases, even if Congress had not echoed the "reflects" language in the Reform Act's version of Rule 35(b). Had that phrase been omitted, the courts would still have construed the two enactments in para materia, there being no obvious reason why Congress would want the reflects limitation to apply in one context

-12-

but not in the other.  Cf. <u>In re Sealed Case No. 97-3112</u>, 181 F.3d 128, 133 (D.C. Cir. 1999) (noting Rule 35(b), § 3553(e), and § 5K1.1 are to be read "<u>in pari materia</u>").  For mandatory minimums, but perhaps only for mandatory minimums, the 2002 deletion of the "reflects" language in the rule may be merely "stylistic."

To put the matter differently, we hold that for re-sentence adjustments that go below the statutory mandatory minimum, Rule 35(b) must be read in conformity with 18 U.S.C. § 3553(e). Congress has never changed the statutory rule that such reductions must reflect only the assistance provided.  Nor is there anything in the "legislative history" of changes to Rule 35(b) that reflects any desire to create a discrepancy for post-sentence adjustments below the mandatory minimum.

Poland's statutory mandatory minimum sentence is 60 months.  The district court was entitled to reduce the sentence to reflect the assistance provided, which it calculated to justify a sentence of 40 months.  It could not, as we read Rule 35(b), provide a greater reduction below the mandatory minimum for any other reason.  This disposes of Poland's reliance on comparability with his cousin, any alternative interpretation of U.S.S.G. § 5K1.1 or otherwise pertinent sentencing factors prescribed by Congress.

<u>Affirmed</u>.

**-Concurring Opinion Follows-**

**TORRUELLA**, **Circuit Judge** **(Concurring)**.  I join the result, but write separately to express my views on our current sentencing regime as it affected this case.

As set forth below, all of the parties, including the district court, agreed that the sentencing disparity between Poland's sentence and his cousin's juvenile sentence supported a sentencing reduction to lessen that disparity.  The plain text of Federal Rule of Criminal Procedure 35(b), after amendments made to it in 2002 and 2007, permitted such a reduction.  The parties and the district court, however, got caught up in the minutiae of whether those amendments, the latter inspired by Booker, allowed the district court to provide such a reduction.  Although I agree with the ultimate result given the existing state of the law, and thus join the majority's affirmance, I find the events that led to that result troubling.

In order to understand my concerns, I will provide some background that was not essential to the majority opinion but is relevant here.  After Poland cooperated, the government filed a motion to reduce Poland's sentence under Rule 35(b), recommending a 48-month sentence.  Poland filed a responsive memorandum, urging the district court to look beyond the factors outlined in U.S.S.G. § 5k1.1 and consider all factors under 18 U.S.C. § 3553(a).  Poland specifically asked the court to consider the disparity between Poland's sentence (63 months) and his cousin's (3 months).

-14-

A hearing on the government's motion was held on January 9, 2008. The district court prefaced the hearing by asking the parties to address the recent 2007 amendments to Rule 35(b), which had occurred a month earlier. The government, going first, explained that Poland's cooperation alone "is clearly worthy of more than what we have asked for," but made its recommendation in order to reflect Poland's delay in cooperating until after sentencing and his obstruction of justice prior to his decision to cooperate. The government then emphasized that Poland's cousin "received a substantially, substantially less sentence than Jonathan did," that "the juvenile sentence . . . is not even on the radar screen," and that "the disparity between the two sentences is difficult for me to justify at this point," given that "the juvenile was more culpable and did more."

When asked by the district court whether the court was permitted to consider "the 3553(a) factors," and, in particular, the sentencing disparity in reducing Poland's sentence, the government responded:

> I do, I do. I -- at your request I read the rule, I read the notation, the commentary to the rule, and it was very clear -- I had a discussion with [Poland's counsel] about it, it was clear to both of us -- that, like a typical sentencing, not a re-sentencing or situation such as this, if you were -- you are essentially to treat the Rule 35 motion in the light you would a -- if you were re-sentencing Mr. Poland today because you may look beyond the guidelines at 3553(a) factors. And the language of the statute used to be simply that

-15-

you looked at the guidelines, which of course the Court knows is now advisory. So I read that to mean that the book is open in terms of the factors that you may consider both in the advisory guidelines as well as 3553(a) factors in coming to a conclusion as to what percentage of a departure should be imposed if a departure should be imposed.

So I do believe you can follow 3553(a). I would encourage the Court to do so. I certainly did so in general terms, theoretically, in coming up with the reasons why a Rule 35 motion was appropriate. But I do think that Mr. Poland has a number of indicia in his case that speak directly to many of the factors in 3553(a), such as the comparison of his behavior to that of a juvenile and the disparity between their sentences.

When asked, the government clarified that its recommended sentence of 48-months did not reflect the disparity between Poland and his cousin's sentences, but admitted that "I don't disagree with anything that [Poland's counsel] said in his response." The district court asked if the government's "agreement that the [3553(a)] factors can govern reflect your office's consideration of the significance of this change?" The government responded that the "appellate division" had not addressed the issue.

After the hearing, the government attorney consulted with the U.S. Attorney's Office to determine its position. On January 10, 2008, the government filed a memorandum clarifying that position. In the memorandum the government stated that "while the Court may consider 3553(a) factors in reducing Defendant's sentence, it is the Government's position that it may do so only in

determining to what extent to reduce the sentence based on Defendant's cooperation." Foreshadowing the majority's reasoning, the Government then stated that "the extent of any reduction is strictly limited by 18 U.S.C. § 3553(e) in this case as a result of the mandatory minimum."

With this background in mind, I stress my discomfort with a sentencing regime (including its mandatory minimum sentences) in which the good faith efforts of the parties and the district court to do the right thing and reflect the disparity between Poland's sentence and his cousin's sentence, were essentially derailed by the complexity and uncertainty of the existing state of the law. The district judge, in fact, stated outright that "[i]f [it] were able to consider these additional § 3553(a) factors, [it] would reduce the defendant's sentence to thirty months." United States v. Poland, 533 F. Supp. 2d 199, 214 (D. Me. 2008). Instead, the district court was reduced to divining the propriety of several changes to Rule 35(b) in light of Booker, ultimately expressing some concern that a unconstrained interpretation of Rule 35(b) may violate the Rules Enabling Act, an Act which, as the sentencing court admitted, has never in its history caused the Supreme Court to invalidate a rule. See id. at 210-11 (citing sources).

I also express disappointment with the government's change of position. That said, the government did go to great pains to point out that the disparity between Poland's sentence and

his cousin's sentence was "difficult . . . to justify at this point" and expressed great sympathy with Poland's position that the sentencing disparity should be considered.  It is troubling that such concerns had to fall by the way side.

Taken together, the district court's and the government's actions are indicative of a sentencing regime (in particular, the mandatory minimum in this case) containing little flexibility.  In the real life scenario of sentencing, such a regime makes little sense because it takes away much of the discretion from where it should be, those on the front lines of the criminal justice system.  Our sentencing regime reflects the work of persons with a background of much theory and little practice in the art of sentencing.  I do not begrudge the district court for its care in attempting to reach the right conclusion.  The issue before us is difficult, and given the existing state of law, I am forced to agree with the result.  But I am also obliged to vent my frustration with the situation in which we find ourselves mired, a sentencing regime plagued with uncertainty and rigidity.