RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONALD BERGRIN,

*Defendant-Appellant.*

No. 16-4240

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:15-cr-00004-1—Dan A. Polster, District Judge.

Argued: March 14, 2018

Decided and Filed: March 16, 2018

Before: MERRITT, CLAY, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Gary W. Crim, Dayton, Ohio, for Appellant. Brian M. McDonough, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Gary W. Crim, Dayton, Ohio, for Appellant. Brian M. McDonough, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. The government charged Ronald Bergrin with threatening a federal officer. The district court dismissed the charges against Bergrin after finding him incompetent to stand trial. Bergrin appealed, prompting this case-or-controversy question: Does a criminal defendant have standing to appeal the dismissal of charges against him? There is

reason to wonder. An appellate victory would not help him in one sense, as it would allow the criminal case against him to proceed. And an appellate loss would not help him in another sense, as it would add sting to the incompetence finding. Even so, the defendant may appeal. Although Bergrin prevailed in one way (the court dismissed the charges), he did not prevail in another way (the court found him incompetent to stand trial), and that last reality suffices to permit the appeal. We have jurisdiction and affirm.

I.

Some backstory adds color and perhaps some explanation for Ronald Bergrin's conduct. Bergrin's cousin, Paul Bergrin, was a state and federal prosecutor in New Jersey. He eventually became a criminal defense lawyer—and an infamous one at that. Paul Bergrin's legal advice to his clients (and apparently to himself) was simple: "No witness, no case." Mark Jacobson, *The Baddest Lawyer in the History of Jersey*, N.Y. Mag. (June 5, 2011). This strategy did not end well for him and others. The government charged Paul with murdering government witnesses, overseeing mortgage fraud and drug trafficking operations, and violating federal racketeering laws. A federal jury convicted Paul of the charges in 2013, and the court sentenced him to life in prison. *United States v. Bergrin*, Crim. No. 09-369 (D.N.J. Sept. 23, 2013).

That conviction set the wheels in motion for today's case. Ronald Bergrin apparently sought revenge for his cousin's convictions. He set his sights on Shawn Brokos, the lead FBI agent in his cousin's case. On December 18, 2014, Bergrin sent an email to another relative (Paul's daughter) who lived in New Jersey. He said he was in Cleveland, Ohio, "[l]ess than 1 hour from" Brokos's home, that he "will be stopping by to say hello" to the agent, and that Brokos "will never sleep at night again." R. 110-1 at 3. He asked the daughter "not [to] send this out." *Id.* She sent it out anyway.

Based on the letter, the government charged Bergrin with threatening a federal officer, sending threats in interstate commerce, and cyberstalking. 18 U.S.C. §§ 115(a)(1)(B), 875(c), 2261A(2)(B). He was taken into custody, and the district court refused to release him on bail on the ground that he was a flight risk.

At his initial appearance, the district court appointed a federal defender. Over the next six months, Bergrin cycled through five sets of lawyers. His first lawyer indicated in December 2014 that he had no reason to question Bergrin's competence. By March 2015, his third lawyer saw things differently. He asked the court for an evaluation of Bergrin's competence to stand trial, 18 U.S.C. § 4241, and his sanity at the time of the alleged offense, *id.* § 4242. At various times, Bergrin also asked to represent himself. *See Faretta v. California*, 422 U.S. 806 (1975). The district court referred Bergrin to the Bureau of Prisons for an evaluation, where he remained in custody. 18 U.S.C. § 4247(b).

In December 2015, the district court held a competency hearing. Based on two doctors' reports and live testimony, as well as a number of Bergrin's well-off-the-beaten-path letters, the court concluded that Bergrin was "unable . . . to assist properly in his defense," 18 U.S.C. § 4241(d), because of "his paranoid delusions exacerbated by stress," R. 60 at 78. In accordance with § 4241(d), the court committed him a second time "to determine whether there is a substantial probability" that doctors could restore him to competence. He remained in custody.

The court held a second competency hearing in October 2016. The new psychiatric report said that Bergrin was not "delusional," did not "have a severe mental disease or defect," and was "competent to proceed" with trial. R. 111-2 at 11, 15–16. During the hearing, Bergrin continued to insist that his attorney was "working hand in hand with the Office of the U.S. Attorney against" him. R. 108 at 3. The court found that Bergrin was delusional and had a "mental disease or illness," and could not assist his attorneys in his defense or effectively represent himself. *Id.* at 21–22, 25–26. Because he remained incompetent, the court dismissed the case without prejudice and released Bergrin.

Bergrin insisted that he "would rather be incarcerated and be given a fair trial than let loose and be[] declared incompetent." *Id.* at 26. True to his word, he appealed.

## II.

*Jurisdiction.* May Bergrin appeal a judgment dismissing all criminal charges against him? Yes, at least under these circumstances.

A criminal defendant does not have a constitutional right to appeal. *McKane v. Durston*, 153 U.S. 684, 687 (1894). Any such right is a creature of a federal statute in this case, 28 U.S.C. § 1291, and would be a function of state statutes in other cases, *see, e.g.*, Ohio Rev. Code Ann. § 2953.08; Tex. Code Crim. P. § 44.02.

Section 1291 permits us to hear appeals "from all final decisions of the district courts of the United States." Whether the appeal is civil or criminal, our power extends to "all final decisions." The district court's judgment dismissing this indictment without prejudice was by all measures "final." *See United States v. Gainey*, 440 F.2d 290, 291 (D.C. Cir. 1971) (dismissal without prejudice); *United States v. Martinez*, 763 F.2d 1297, 1311 (11th Cir. 1985) (judgment of acquittal).

It's true that courts apply § 1291 strictly in the criminal context. *See* 15B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3918 (2d ed. 2017). Confirming the point, *Parr v. United States* held that a defendant could not appeal the dismissal of one indictment while a second, later-filed indictment remained pending in another district court. 351 U.S. 513, 518 (1956). Else, the Court held, that would undermine the "statutory policy against piecemeal appeals," *id.* at 519, a serious concern for criminal cases, *Cobbledick v. United States*, 309 U.S. 323, 324–26 (1940). But Bergrin's appeal does not risk delay of this sort or any other. All of the litigation with respect to the charges against him is over.

Even if § 1291 permits this appeal, does Article III permit this appeal? We review judgments, not opinions. *Texas v. Hopwood*, 518 U.S. 1033, 1034 (1996). Which explains why we generally "decline [to] review . . . a prevailing party's challenge" to the reasoning of an opinion if the judgment comes out in his favor. *Camreta v. Greene*, 563 U.S. 692, 702 (2011). "But in such a case, Article III is not what poses the bar" to appellate review. *Id.* Article III's case-or-controversy requirement asks only "whether the litigant retains the necessary personal stake in the appeal"; it does not "matter that the appealing party was the prevailing party below." *Id.*; *see United States v. McAndrews*, 12 F.3d 273, 278 (1st Cir. 1993).

What counts as a "necessary stake" in an appeal by a prevailing party? Three examples give some contour. In one case, an alleged trademark infringer was found not liable, but the

Supreme Court nonetheless allowed the company to challenge a finding that the plaintiff's mark was valid. *Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 241–42 (1939). In another case, would-be class plaintiffs obtained full payment from the defendant, but the Court still allowed them to appeal the denial of class certification. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 340 (1980). And in still another case, the court of appeals granted qualified immunity to police officers on the ground that the constitutional right at issue was not clearly established, but the Court still permitted the officers to appeal the preliminary holding that they had violated the Constitution. *Camreta*, 563 U.S. at 699–701.

Bergrin has at least as much of an interest in the district court's judgment as these appellants. Perhaps more. The district court found him "mental[ly] disease[d]" and incompetent to stand trial. While that finding had immediately helpful consequences (the court dismissed the criminal charges against him as a result), it has potentially hurtful consequences for him in the future. The "collateral consequences of being adjudged mentally ill" include potential limits on the right to vote, serve on a jury, obtain a driver's license, and own a gun. *In re Ballay*, 482 F.2d 648, 651–53 (D.C. Cir. 1973).

In addition to having Article III power to review this appeal, we also think review makes sense as a matter of "practice and prudence." *Camreta*, 563 U.S. at 703. As in *Electric Fittings*, Bergrin does not take issue with erroneous findings that were "not necessary to support the decree," such as dicta in an opinion or fleeting statements during a hearing. 307 U.S. at 242. "[H]ere the decree itself purports to adjudge" his mental capacity. *Id.* In its judgment, the district court states that it "found Ronald Bergrin incompetent to stand trial" and dismissed the indictment without prejudice "for the reasons stated on the record." R. 100. As in *Roper*, "there ha[s] been an adverse decision on a litigated issue" (finding him incompetent) and Bergrin "continued to assert an interest in the outcome of that issue" (remaining willing to face trial). 445 U.S. at 336 n.7. And as in *Camreta*, the specter of unreviewability hovers over Bergrin's head—and ours. 563 U.S. at 708. Recall that Bergrin could not have appealed the court's incompetence finding before it entered final judgment. *See United States v. Triplett*, 928 F.2d 1134 (6th Cir. 1991) (Table); *United States v. Woolsey*, 916 F.2d 714 (6th Cir. 1990) (Table).

That means we would have had to turn away a prior appeal as too early only to turn him away today because the appeal is too late.

A neighboring statutory provision reinforces this conclusion. A defendant may appeal from an acquittal by reason of insanity under 18 U.S.C. § 4243. *See United States v. Stewart*, 452 F.3d 266, 272 (3d Cir. 2006); *United States v. Jackson*, 19 F.3d 1003, 1004 n.1 (5th Cir. 1994); *United States v. Clark*, 893 F.2d 1277, 1280 n.3 (11th Cir. 1990); *United States v. Wallace*, 845 F.2d 1471, 1472 (8th Cir. 1988). A decision to dismiss charges on incompetence grounds under § 4241 has some parallels to an acquittal on insanity grounds. An incompetence finding, just like a commitment order, "immediately affects [Bergrin's] rights." *Stewart*, 452 F.3d at 273. The "consequences of" the one finding—insanity—"require that appeal be available." 15B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3918.7 (2d ed. 2017). The same should be true for the other finding given its immediate consequences for Bergrin.

*Incompetence finding.* Having assured ourselves that we have jurisdiction over the appeal, we turn to the merits. Bergrin claims that insufficient evidence supports the district court's incompetence finding under § 4241. We review that conclusion for clear error because a "defendant's competence is a question of fact." *United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016) (quotation omitted). Bergrin does not appeal the district court's independent conclusion that he was incompetent to exercise his constitutional right to represent himself. *See Faretta v. California*, 422 U.S. 806 (1975).

A district court may find a defendant incompetent because "he is unable [1] to understand the nature and consequences of the proceedings against him or [2] to assist properly in his defense." 18 U.S.C. § 4241(a). The district court had ample reason to find that Bergrin failed the second prong. In six months, he repeatedly terminated his lawyers (firing nearly one a month) and sent inexplicable, even bizarre, letters to the court, such as one calling the judge a "Nazi war criminal." R. 60 at 8–11. At the first competency hearing, Dr. Schmedlen testified that Bergrin was "not able to assist his attorneys." *Id.* at 41–43. And at the second hearing, Bergrin persisted in his belief that his counsel had colluded with the federal government and that "[t]hey are doing everything to hurt me," "everything imaginable and everything unimaginable."

R. 108 at 11, 16. Furthermore, the district court pointed to filings from Bergrin's counsel showing "that not only can't he assist with the defense, he's actively undermining their ability to defend [him]." *Id.* at 17. On this record, we have no "definite and firm conviction" that the district court erred. *Dubrule*, 822 F.3d at 875.

Bergrin replies that when he appeared for his second competency hearing, the only evidence before the court was Dr. Cunic's report, which concluded that he was not delusional and was "competent to proceed." R. 111-2 at 11, 15–16. But a judge can consider his on-the-scene observations when deciding a defendant's competence and can keep in mind the evidence provided earlier in the case. *United States v. Miller*, 531 F.3d 340, 348 (6th Cir. 2008) (finding that a court may consider several factors, including irrational behavior, demeanor at trial, and any prior medical opinion on competence to stand trial). A district court judge who has observed a defendant for two years is well situated to assess whether the individual can assist his lawyers. "It is the duty of the District Court to make a specific judicial determination of competence to stand trial, rather than accept psychiatric advice as determinative on this issue." *United States v. David*, 511 F.2d 355, 360 n.9 (D.C. Cir. 1975). The court did just that.

Bergrin also argues that the court impermissibly substituted its own diagnoses for medical diagnoses. He argues that the district court diagnosed him with paranoid delusions, even though none of the three medical experts diagnosed him as delusional. However, as Dr. Schmedlen was clear to point out, there is a distinction between being diagnosed with psychotic delusions and having "a personality pattern of being suspicious or paranoid." R. 60 at 48. Though Bergrin was not found to suffer from "formal psychotic delusions" by any of the experts, Bergrin had formed "a paranoid picture of this whole case," "a paranoid view of this court system," and "a paranoid belief, suspicious belief about the Court, about counsel" that rose to such a level that he could not assist in his defense. *Id.* at 42–43, 60. The district court did not engage in any impermissible lay diagnosis.

At one point, the government raised the concern that Bergrin was gaming the system by feigning incompetence. In response, the district court noted that Bergrin remained in custody for twenty-two months, which was longer than the Sentencing Guidelines would have recommended and longer than the court would have sentenced Bergrin had he been tried and convicted.

Plus, the court found Bergrin incompetent, the court dismissed the charges against Bergrin without prejudice, and we have now upheld both rulings on appeal. On this record, it is hard to say who is gaming whom.

For these reasons we affirm.